## SIMPSON and wife *vs.* MOORE and others.

A testator, by his will, directed his executors to retain and invest, and keep invested from time to time, one sixth part of his estate, upon real estate security, or in stocks, and to apply and pay over the *income* thereof, to his wife, during her life. A portion of the trust fund was invested by the trustee appointed in the place of the executor, in the capital stock of the National Bank. The charter of the bank expired January 1, 1857, and the bank reorganized under the general banking law. Preparatory to the reorganization, the bank made and declared a dividend, over and above the par value of the stock, of 18 per cent; leaving it to the option of the stockholders to take stock in the new bank, adding the said dividend of 18 per cent, or to take the same in money. The trustee elected, instead of money,

---

Simpson *v.* Moore.

---

to receive the dividend in the new stock, and received the same, and held the certificates therefor.

*Held,* that the testator intended all the income of the property which he ordered to be converted should be paid to his wife, but that the capital so invested should be preserved.

*Held also,* that under the case of *Clarkson* v. *Clarkson,* (18 *Barb.* 646,) the payment of the 18 per cent by the bank must be considered as a dividend; but as it contained part of what was held as capital, when the stock was purchased, so much thereof as was necessary to make up the original investment, over and above the par value of the stock taken by the trustee in exchange, should be retained by him; and that the residue belonged to the plaintiff.

THE complaint in this action alleged that John Wilson, formerly of the city of New York, died on the 21st of December, 1837, leaving a will, which was afterwards admitted to probate, and recorded in the office of the surrogate of New York. That by said will the testator bequeathed to the plaintiff Mary Ann Simpson, then his wife, the income during her life, of one sixth part of his estate, in these words: "One sixth part of all my estate (including the proceeds of my real estate sold) I direct my executors to retain and invest, and keep invested from time to time upon real estate security or in stocks by them deemed safe, and to apply and pay over the income thereof, from time to time, as it may be received, to my wife, Mary Ann Wilson, during her life, to be to her sole and separate use in the event of an after-marriage." The will further directed, that upon the death of the plaintiff the said one sixth should be divided among the children of the testator and their representatives; subject to a power of appointment to the plaintiff, as to three fifths of the fund, among her three children. The testator left him surviving his widow, Mary Ann Wilson, who had since intermarried with the plaintiff John Simpson, her present husband. He also left three children, who were made defendants, together with A. T. Moore, who was, on the 17th of September, 1856, appointed by the court trustee under the will, in the place of James McBride, the executor and trustee named in the will, who had died. The complaint further alleged that, at the time of the

appointment of Moore as such trustee, a portion of the trust fund was in the capital stock of the National Bank of the said city, it having been so invested by McBride, the former trustee, in the year 1844. That it amounted to 69 shares, of $50 each, and for which McBride paid $50 per share. That the charter of the National Bank expired on the 1st of January, 1857. That the bank reorganized under the general banking law, and preparatory thereto made and declared a dividend over and above the estimated par value of said stock, of 18 per cent, and left it to the option of its stockholders to take its stock under its new incorporation, adding the said dividend of 18 per cent, or to take the same in money; that Moore, as such trustee, elected, instead of money, to receive said dividend in the new stock, and received the same; and that he now holds and claims to hold, as such trustee, the stock certificates of the bank, for the same.

The complaint then alleged that a certain other portion of the trust fund, at the time of Moore's appointment as trustee, was invested in the capital stock of the Merchants' Bank, of the city of New York; having been so invested by McBride in October, 1848; and that it amounted to 50 shares of $50 each, and cost $50 per share. That the charter of the bank expired January 1, 1857. That the bank continued or renewed its corporate existence under the general banking law, and preparatory thereto, made and declared a dividend over and above the estimated par value of the stock, of 26 per cent, and left it to the option of the stockholders to take its stock under its new incorporation, adding the said dividend of 26 per cent to the original shares, or to receive the said dividend of 26 per cent in money. And that Moore, as such trustee, elected, instead of money, to receive said dividend in the new stock, and so received the same, and holds the certificates of the bank therefor. The plaintiffs claimed and alleged, however, that such dividend did not belong to the trust estate, but belonged to, and was the property of the plaintiff, Mary Ann Simpson, as "income," under the will. The complaint

alleged that the plaintiff, Mrs. Simpson, had demanded of the trustee to have the said certificates for the amount of said final dividends, and that the same be transferred to her, but that he refused to transfer them, claiming that the same belonged to the trust estate and not to the plaintiff. The plaintiffs prayed judgment that the defendants be required to transfer to Mrs. Simpson the said bank stock certificates for said dividends of 18 and 26 per cent, respectively, or that he pay to her the amount thereof, in cash, together with costs.

The infant defendants put in general answers, by their guardian ad litem, submitting their rights to the protection of the court. The adult defendants admitted most of the facts set forth in the complaint, but denied that the said Merchants' Bank, or the National Bank, made or declared dividends over and above the estimated par value of their stock, of 18 and 26 per cent respectively, or left it to the option of the stockholders to take stock under the new organization, adding the said alleged dividends of 18 and 26 per cent in money. On the contrary, they alleged that the said 18 and 26 per cent was the enhanced value of the stocks respectively, and formed a part of the principal of said investment, and that the defendant, as such trustee, elected, instead of money, to receive said enhanced value in the said new stock, and so received the same. And they claimed and insisted that the certificates for the additional stock belonged to, and formed part of the trust estate, and not the income thereof.

*Flanagan & Cummings,* for the plaintiffs.

*Cambreling & Pyne,* for the defendants Wilson and Cipriant.

*B. W. Bonney,* guardian ad litem for the infant defendants, in person.

INGRAHAM, J. In this case I am of the opinion that the testator intended all the income of the property which he or-

Jones *v.* Butler.

dered to be invested should be paid to the wife, but that the capital so invested should be preserved.

Under the case of *Clarkson* v. *Clarkson*, (18 *Barb.* 646,) the payments in question must be considered as dividends ; but as they contained part of what was held as capital when the stock was purchased, so much thereof as was necessary to make up the original investment, over and above the par value of the stock taken by the trustee in exchange, should be retained by him, and the residue belongs to the plaintiff.

If the parties do not agree on the amount to be retained by the trustee, a reference will be ordered by the court on settling the order.

The costs of the parties to be paid out of the fund ; such costs as to the defendant Cipriant only to be paid, down to the time of the decease of his wife.

[NEW YORK SPECIAL TERM, December 23, 1859. *Ingraham*, Justice.]